IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTHONY DALE MCBRIDE,
      Petitioner,

vs.                               Case No.:  3:10cv82/RV/EMT

KENNETH S. TUCKER,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 3).  Respondent filed an answer and relevant portions of the state court record (doc. 18).  Petitioner filed a reply (doc. 22).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* doc. 18; doc. 22 at 1).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2005-CF-005713, with one count of burglary of an occupied structure (Count 1) and one count of grand theft (Count 2) (Ex. C at 2).  He was charged in Case No. 2006-CF-001664 with one count of grand theft (*id.* at 3).  He was charged in Case No.

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 18).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

2006-CF-002551 with one count of felony petit theft (*id.* at 4).  He was charged in Case No. 2006-CF-002633 with one count of burglary of an occupied dwelling (Count 1) and one count of grand theft (Count 2) (*id.* at 5).   Following a jury trial in Case No. 2005-CF-005713 on February 19 and 21, 2007, Petitioner was found guilty of burglary of an occupied structure as charged in Count 1, and petit theft, a lesser included offense of grand theft charged in Count 2 (*id.* at 25, Ex. D).  Petitioner was adjudicated guilty and sentenced on May 10, 2007, as a habitual felony offender to fifteen (15) years of imprisonment on Count 1, with pre-sentence credit of 401 days, and time served on Count 2 (Ex. J at 55–91; Ex. C at 84–93).   Also on May 10, 2007, Petitioner entered a plea of nolo contendere to all counts as charged in Case No. 2006-CF-001664, Case No. 2006-CF-002551, and Case No. 2006-CF-002633, pursuant to a written plea agreement and sentence recommendation (Ex. J at 55–91; Ex. C at 47–51, 84–93).   Petitioner was sentenced in accordance with the sentence recommendation to five (5) years of imprisonment on the burglary count in Case No. 2006-CF-002633, to run concurrently with the sentence in Case No. 2005-CF-005713; and concurrent terms of five (5) years of imprisonment on the remaining counts, to run concurrently with the sentence in Case No. 2005-CF-005713 (*id.*).

Petitioner, through counsel, appealed the judgment and sentence to the Florida First District Court of Appeal ("First DCA"), Case No. 1D07-2813 (Ex. C at 107).  Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. E). Petitioner filed a pro se initial brief (Ex. F).  The First DCA affirmed the judgment per curiam without written opinion on July 1, 2008 (Exs. G, H).  McBride v. State, 985 So. 2d 1096 (Fla. 1st DCA 2008) (Table).  Petitioner did not seek further review.

On February 27, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. J at 1–36).  The state circuit court summarily denied the motion on June 15, 2009 (*id.* at 37–95).  Petitioner appealed the decision to the First DCA, Case No. 1D09-4103 (*id.* at 96; Ex. K).  The First DCA affirmed the decision per curiam without written opinion on November 23, 2009, with the mandate issuing December 21, 2009 (Exs. L, M).  McBride v. State, 23 So. 3d 113 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on March 5, 2010 (doc. 3).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to"

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct.
2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed
that on any issue raised in a federal habeas petition upon which there has been an adjudication on
the merits in a formal State court proceeding, the federal court should first ascertain the "clearly
established Federal law," namely, "the governing legal principle or principles set forth by the
Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S.
63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme
Court precedent at the time "would have compelled a particular result in the case."  Neelley v.
Nagle, 138 F.3d 917, 923 (11th Cir. 1998), overruled on other grounds by Parker v. Head, 244 F.3d
813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly
established Supreme Court case law, either because "'the state court applies a rule that contradicts
the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a
set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and
nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at
73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these
pitfalls does not require citation to our cases—indeed, it does not even require awareness of our
cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."
Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529
U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court
must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the
facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the
court must go to the third step and determine whether the State court "unreasonably applied" the

governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting <u>Williams</u>, 529 U.S. at 411) (citing <u>Harrington v. Richter</u>, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* <u>Gill</u>, *supra* at 1291 (citing <u>Harrington</u>, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 2010 WL 609844, at *18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

    A.    Ground One:  "Petitioner was denied his Sixth Amendment rights by ineffective assistance of counsel, when counsel failed to discuss and raise a [sic] insanity defense that was available."

    Petitioner alleges he suffers from multiple psychotic disorders, including psychomotor retardation and schizophrenic disorder (doc. 3 at 4).  He states he was involuntarily admitted to a hospital several times due to his condition (*id.*).  In support of this assertion, he submitted partial records from Baptist Hospital, showing he was involuntarily admitted on December 27, 1997, January 15, 1998, May 8, 2004, July 21, 2004, and January 9, 2006, and was diagnosed as suffering from schizoaffective disorder, depression with psychosis, and polysubstance abuse (doc. 3, Ex. A; doc. 22, Ex. A).  He also submitted the last page of a six-page Psychological Evaluation for Competency performed by Dr. James D. Larson, Ph. D., prior to trial in Case No. 2005-CF-005713 (doc. 3, Ex. B).  Petitioner asserts that although he was evaluated by Dr. Larson, the evaluation only determined that he was competent to stand trial, not whether he was insane at the time he committed the burglary and theft (doc. 3 at 8).  He states defense counsel was aware of Petitioner's mental health history and that Petitioner had stopped taking his psychotropic medications prior to and during the time he committed the offenses (*id.* at 4, 7).  Petitioner contends counsel was ineffective for failing to seek an expert evaluation of Petitioner's sanity at the time of the offenses and presenting an insanity defense at trial (*id.* at 4, 7–9).  Petitioner states he raised this claim on direct appeal of his conviction and in his Rule 3.850 motion (*id.* at 4).

    Respondent contends the state court's adjudication of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law (doc. 18 at 5–10).

    1.    Clearly Established Federal Law

    The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have

been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  With regard to counsel's performance, the Eleventh Circuit has stated:

> Trying cases is no exact science.  And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach.  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate."  Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992).  And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy."  Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993).  Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); Chandler, 218 F.3d at 1313 (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

However, not every strategic decision passes constitutional muster.  Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462.  In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.  Counsel's performance is deficient only if it is "outside the wide range

of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Issue Three on direct appeal (Ex. F at 16–18) and Ground 1in his Rule 3.850 motion (Ex. J at 7–10). The state circuit court denied the claim on the following grounds:

Defendant's claim is refuted by the record.  "Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."  Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000).  While it is clear from the record that Defendant has an extensive mental health history, it is also clear that counsel considered and rejected the possibility of an insanity defense.  Counsel called Dr. James Larson to testify in mitigation at Defendant's sentencing, at which point counsel stated, "Dr. Larson did his evaluations.  Although we did not have an NGRI (not guilty by reason of insanity) defense, we have mitigation, Your Honor, as to the—as to the psychiatric history."[FN3, reference to transcript of sentencing hearing]   Consequently, Defendant has failed to demonstrate deficient performance on the part of counsel, in that he failed to demonstrate that counsel's actions were unreasonable, and he is not entitled to relief on this basis.

(Ex. J at 279–81).

The state circuit court's written opinion demonstrates that the court correctly applied the Strickland standard in adjudicating all of Petitioner's ineffective assistance of counsel claims (Ex. J at 38–39).  Additionally, the state court's factual findings, including the finding that defense counsel made a tactical decision not to pursue an insanity defense, are presumed correct as Petitioner has failed to rebut those findings with clear and convincing evidence.  Therefore, Petitioner is not entitled to habeas relief unless he demonstrates the state court's decision was an unreasonable application of Strickland.

Under Florida law, to establish the affirmative defense of insanity, a defendant must prove by clear and convincing evidence that at the time of the commission of the acts constituting the offense, he (1) had a mental infirmity, disease, or defect, and (2) because of this condition he (a) did not know what he was doing or its consequences, or (b) although he knew what he was doing and its consequences, he did not know that what he was doing was wrong.  Fla. Stat. § 775.027(1), (2) (2005).

According to the probable cause affidavit, on October 17, 2005, Deputy Tyree observed Petitioner climbing down a fence located on the back side of World Automotive (Ex. C at 7).  Deputy Tyree observed that Petitioner was carrying a weedeater and a gas blower, which he immediately began to place on the ground when he saw Tyree (id.).  Deputy Tyree and two other deputies surrounded Petitioner (id.).  Deputy Tyree placed Petitioner in handcuffs and advised him

of his Miranda rights (*id.*). Petitioner stated he understood his rights and agreed to speak with Deputy Tyree (*id.*). When asked why he was coming out of the fenced yard of World Automotive, Petitioner stated he had been asked by a friend named Mike to stop by and cut the grass (*id.*). Deputy Tyree contacted two employees of World Automotive, and they both identified the weedeater and blower as belonging to World Automotive (*id.*). They further advised that they had never seen Petitioner before (*id.*). Deputy Tyree and the employees observed a utility trailer from which "tie downs" for the yard equipment had been removed and were laying on the ground (*id.*).

Defense counsel sought suppression of Petitioner's statements to law enforcement, on the ground that they were the product of an arrest that was unlawful due to a lack of probable cause (Ex. C at 23–24). Defense counsel also filed a motion in limine to preclude evidence regarding Petitioner's statements to law enforcement and World Automotive employees, on the ground that such statements constituted hearsay (*id.* at 21–22). The trial court heard argument on the motions and denied them (Ex. D at 51–63).

The theory pursued by defense counsel at trial was that the deputies rushed to judgment and overreacted when they observed Petitioner in possession of the lawn equipment (Ex. D at 70–71, 77–87, 94–100, 104–09, 115–25, 151–59, 197–207). Defense counsel elicited testimony from State's witnesses that none of them actually saw Petitioner on the property of World Automotive (*id.*). Counsel also highlighted conflicts in the testimony of the three deputies: one deputy stated he saw Petitioner climbing a fence near the property carrying the weedeater and blower; another deputy testified he saw Petitioner on the fence with one item, and the other item was on the ground; and a third deputy testified he saw Petitioner on the fence with nothing in his hands (*id.*). Counsel also elicited testimony from World Automotive employees that they employed a person to perform lawn maintenance on the property, and neither of them actually observed the blower or weedeater on the utility trailer, where the items were routinely kept, at least three hours prior to the deputies observing Petitioner with or near the items (*id.*). Defense counsel argued there was no direct evidence that Petitioner was on the property of World Automotive or that he left that property with any items (*id.*). He additionally argued there was a reasonable explanation as to why the weedeater and blower were found on a paved area next to the fence, that is, the items were used to do lawn maintenance in that area (*id.*).

Petitioner declared his innocence to the probation officer who prepared the pre-sentence investigation report ("PSI"), stating, "I'm innocent.  The reason why I was on the fence that day is because I was trying to spot somebody in the back of the business.  The business was still open.  I'm taking psychotropic medication but I was off it when this happened." (Ex. C at 97).  Petitioner further stated the reason he was not taking his medications was that he thought he did not need them (*id.* at 104).  The PSI included information that Petitioner had been previously diagnosed with bipolar disorder and paranoid schizophrenia (*id.*).

At the sentencing, defense counsel argued:

> MR. FAYARD [defense counsel]:  Your Honor, the PSI . . . speaks for itself.  However, one thing that needs to be brought to the Court's attention is that Mr. McBride has a very unfortunate history going back to when he was a child, a lack of guidance.  He has an eighth grade education.  He started using various drugs at a very young age being influenced on the streets.  This resulted in psychiatric problems.
>
> Mr. McBride was declared to have psychotic problems, I believe, back in the 80s.  He was placed on SSI.  Those documents from SSI were then provided to Dr. Larson, who is present in court today.  Dr. Larson did his evaluations.  Although we did not have an NGRI defense, we have mitigation, Your Honor, as to the—as to the psychiatric history.  And so we would ask Dr. Larson to address the Court pertaining to psychiatric conditions that he reviewed and the type of treatment that he may be amenable to.

(Ex. J at 63–64).

Dr. Larson testified he met with Petitioner on two occasions (Ex. J at 64–65).  Dr. Larson testified Petitioner had a "chaotic" childhood and was chemically dependent (*id.* at 65).  He testified he evaluated Petitioner with a mental status examination and psychological interview (*id.* at 67).  He also reviewed Petitioner's current and past psychiatric records (*id.*).  Dr. Larson testified Petitioner had multiple psychiatric hospitalizations, and his records included multiple psychotic diagnoses, mood disturbance diagnoses, and substance abuse diagnoses (*id.*).  He testified it was not uncommon for psychotic individuals to be diagnosed with one type of psychosis one time and another type another time (*id.*).  Dr. Larson testified Petitioner had been treated with numerous anti-psychotic medications and mood stabilizing medications (*id.* at 67–68).  He testified Petitioner's records showed he responded to psychiatric treatment and stabilized with anti-psychotic medications

(*id.* at 68–69).  Dr. Larson testified that as part of the competency evaluation, he determined whether Petitioner knew the difference between right and wrong (*id.* at 69).  He testified that if a defendant is determined competent, there was "no doubt" the defendant knew the difference between right and wrong (*id.*).  Dr. Larson testified that if Petitioner stopped taking medication, he would probably decompensate and may become psychotic, unpredictable, and more inclined to abuse substances (*id.*).  He testified that substance abuse was an integral part of Petitioner's mental health problems (*id.* at 69–70).

In the state post-conviction proceeding, Petitioner alleged that upon his arrest and detention at the local jail, a psychiatrist examined him and prescribed the following:  20 milligrams of Haldol twice daily; 200 milligrams of Thorazine twice daily; 500 milligrams of Depakote twice daily; 2 milligrams of Cogentin twice daily; and 50 milligrams of Benadryl at night (Ex. J at 11).  In support of his claim, he submitted medical records from the jail, showing the medications he was taking from September 26, 2006 to August of 2007, nearly a year after his initial arrest (*id.* at 34–36).  In his post-conviction motion, he also described the mental state of decompensation, but he did so in largely a third-person, textbook fashion (*id.* at 23–24).[3]  Petitioner did not provide the state court

---

[3] Petitioner wrote:

> Decompensation is a state in which the Defendant's symptoms of mental illness (i.e. auditory, visual hallucinations) manifest themselves and significantly impair his ability to relate appropriately with his environment.  Decompensation occurs with the absence of or insufficient amounts of or right kind of medications.  As earlier noted, doctors have experimented with medications and dosages for the Defendant for years.  Decompensation may occur cyclically with either gradual or rapid onset.

> During this period of decompensation, the Defendant appears to know what he is doing at times, but may be attending to stimuli others are unaware of.  The most severe form of decompensation, psychosis, results in a break from reality.  The Defendant does not see a need for any medication and his internal stimuli confirm that medication is harmful and doctors are plotting against him.

> This period is also the time the Defendant is most open to suggestions from others who have the ability to manipulate him.  In fact, there are incidents in the mental health field of vulnerable mentally ill individuals being denied their medication to enforce their susceptibility to suggestability [sic] to engage in self-harmful behaviors such as prostitution, self-mutilation all the way to committing suicide or homicide.

> The Defendant is also susceptible to the barage [sic] of accusatory and goading internal attacks from the auditory and visual hallucinations he suffers.  These hallucinations are generally negative, threatening and aimed at the Defendant's self-esteem.  Hallucinatory compliance is the primary cause of suicide in these individuals.

with any facts describing his mental state on October 17, 2005, the date of the burglary and theft at World Automotive.[4]

The portion of Dr. Larson's evaluation submitted by Petitioner to the state court, which was referenced in the state court's decision and attached thereto stated:

> My advisory opinion is that the Defendant is competent to proceed.
>
> In the final disposition of this case, the Court may want to take into account this man suffers from a significant mental disorder for which he is in need of specialized treatment. This disorder is unrelated to substance abuse, and he is amenable to such treatment.
>
> Secondly, the Defendant has a history of functioning quite well in the community when he takes his medications and abstains from substance abuse. However, he is quick to decompensate if he goes off his medications and/or engages in substance abuse. Consequently, the Court may want to take into account my concern that this man will need psychiatric treatment for the foreseeable future. Given his history of noncompliance, the Court may consider it appropriate to mandate mental health treatment upon his eventual release into society.

(doc. 3, Ex. B).

The record supports the state court's factual finding that defense counsel considered and rejected the possibility of an insanity defense. The state court's determination that counsel's decision was reasonable is supported by the argument that an insanity defense would have been inconsistent with the reasonable defense theory presented at trial, that Petitioner did not commit the crimes, and the evidence was insufficient to establish beyond a reasonable doubt that he committed

---

(Ex. J at 23–24).

[4] As previously noted, Petitioner submitted additional medical records in the instant federal proceeding, showing he was involuntarily admitted to a hospital on December 27, 1997, January 15, 1998, May 8, 2004, July 21, 2004, and January 9, 2006, and was diagnosed as suffering from schizoaffective disorder, depression with psychosis, and polysubstance abuse (doc. 3, Ex. A; doc. 22, Ex. A). The medical records closest in time to the commission of the offenses, October 17, 2005, show his mental state three months later, on January 9, 2006, after he had been released on pre-trial bond (doc. 22, Ex. A). Those records indicate Petitioner reported to an emergency room with complaints of suicidal ideations (doc. 22, Ex. A). He admitted to the examining doctor that he overdosed on cocaine but had been "clean" for almost a year prior to that (id.). He additionally reported auditory hallucinations (id.). Petitioner told the doctor he was previously taking Prozac, Risperdal, and Klonopin, but had not taken the medication "in a long time" (id.). Petitioner did not submit these records to the state court, nor has he shown he was unable to do so through the exercise of due diligence (Petitioner submitted the records to this court in March of 2010, only nine months after the state circuit court denied his Rule 3.850 motion). Therefore, these additional records may not be used to establish Petitioner's entitlement to an evidentiary hearing or federal habeas relief. *See* 28 U.S.C. § 2254(d)(2), (e).

them.  Further, Petitioner failed to provide the state court with evidence that clearly and convincingly showed that because of his mental condition he (1) did not know what he was doing or its consequences on October 17 2005, when he committed the crimes, or (2) although he knew what he was doing and its consequences, he did not know that what he was doing was wrong.

The undersigned cannot say that the state court unreasonably applied <u>Strickland</u> in concluding defense counsel was not ineffective for failing to pursue an insanity defense.  *See* <u>Dill v. Allen</u>, 488 F.3d 1344, 1357 (11th Cir. 2007) (citations omitted) ("[C]onstitutionally sufficient assistance of counsel does not require presenting an alternative—not to mention unavailing or inconsistent—theory of the case."); <u>Kight v. Singletary</u>, 50 F.3d 1539, 1546 (11th Cir. 1995) (failure to pursue insanity defense when defendant would not admit culpability in crime and failed to come forward with evidence to support claim of insanity, was not ineffective assistance of counsel); <u>Presnell v. Zant</u>, 959 F.2d 1524, 1533 (11th Cir. 1992) (rejecting habeas petitioner's ineffective assistance of counsel claim based upon counsel's failure to raise insanity defense because defendant failed to come forward with evidence supporting insanity defense); <u>Sheley v. Singletary</u>, 955 F.2d 1434, 1440 (11th Cir. 1992) (petitioner failed to overcome strong presumption that counsel's conduct was reasonable, especially in view of two doctors' report supporting defendant's competency, which indicated weakness of insanity defense and was relevant factor in determining reasonableness of counsel's conduct); <u>Lee v. Wainwright</u>, 457 F.2d 771, 772 (5th Cir. 1972) (counsel's decision not to pursue insanity defense falls within realm of trial counsel's strategy, which was a wise decision in light of reports of two psychiatrists, who concluded petitioner was sane at time of arraignment and trial); *see also* <u>Cleckler v. McNeil</u>, No. 3:07cv283/MCR/EMT, 2009 WL 700828, at *9 (N.D. Fla. Mar. 16, 2009) (petitioner failed to establish ineffective assistance of counsel based upon counsel's failure to pursue insanity defense, where facts asserted by petitioner fell far short of suggesting he was insane at the time of commission of the offense, and insanity defense would have completely contradicted reasonable defense presented at trial, that petitioner did not the commit crime, and the evidence was insufficient to show he committed the crime) (unpublished); *Cf.* <u>Hunt v. Comm'r, Ala. Dep't of Corr.</u>, 666 F.3d 708 (11th Cir. 2012) (having chosen a reasonable defense theory, that petitioner did not cause the victim's death, defense counsel was not required to pursue intoxication defense as well, because such defense would have been

inconsistent with strategy of denying petitioner's guilt); <u>Nelson v. Nagle</u>, 995 F.2d 1549, 1554 (11th Cir. 1993) (per curiam) (citations omitted) ("[The defendant's] factual innocence defense and the intoxication defense were inconsistent.  We find that [counsel's] decision not to present an intoxication defense was reasonable in light of the factual innocence defense."). While fairminded jurists could disagree on the correctness of the state court's determination that Petitioner's claim lacked merit, this proves that federal habeas relief is precluded.  *See* <u>Harrington</u>, 131 S. Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (citation omitted).

B.     <u>Ground Two</u>

Petitioner expressly abandoned this claim (*see* doc. 22 at 5).

C.     <u>Ground Three:  "Petitioner was denied his Sixth and Fourteenth Amendment rights to ineffective [sic] assistance of counsel, when counsel allowed him to proceed to trial without a competency hearing."</u>

Petitioner contends counsel performed ineffectively by failing to move for a competency hearing (doc. 3 at 5, 11).  He states the single psychological evaluation from Dr. Larson did not comport with the requirements of Rule 3.210(b) of the Florida Rules of Criminal Procedure, and counsel should have requested a second evaluation, as required by Rule 3.210 (*id.* at 11).  Petitioner argues counsel was aware of his history of psychosis and should have required a competency hearing to determine whether Petitioner was competent to proceed (*id.*; doc. 22 at 5–8).  Petitioner states he raised this claim in his Rule 3.850 motion (doc. 3 at 5).

Respondent contends the state court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law (doc. 18 at 12–13).

1.     Clearly Established Federal Law

The <u>Strickland</u> standard, articulated *supra*, governs this claim.

2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground 4 in his Rule 3.850 motion (Ex. J at 27–30).  The state court adjudicated the claim as follows:

Defendant's claim is refuted by the record.  In a letter filed February 26, 2007, a few days after Defendant's trial, Defendant wrote that he was "sending [the

Court] a copy of his psychological evaluation by Dr. Larson" and requested leniency from the Court due to his mental health concerns.  Attached to the letter is the last page of an evaluation by Dr. Larson in which he concludes that Defendant is competent to proceed.[FN8, reference to Petitioner's letter to the court with attachment]

(Ex. J at 41).

In the letter referenced by the state court, Petitioner asked the sentencing judge to consider Dr. Larson's recommendation and send him to a mental health treatment center instead of prison (Ex. J at 94–95).

At the time of Petitioner's trial, Rule 3.210 of the Florida Rules of Criminal Procedure provided, in relevant part:

> **(b) Motion for Examination.**  If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of the motion, and shall order the defendant to be examined by no more than 3, nor fewer than 2, experts, prior to the date of the hearing. . . .
>
> (1)  A written motion for the examination made by counsel for the defendant shall contain a certificate of counsel that the motion is made in good faith and on reasonable grounds to believe that the defendant is incompetent to proceed.  To the extent that it does not invade the lawyer-client privilege, the motion shall contain a recital of the specific observations of and conversations with the defendant that have formed the basis for the motion.

Fla. R. Crim. P. 3.210(b) (2005).

In light of Dr. Larson's opinion that Petitioner was competent to proceed, Petitioner failed to show that defense counsel had a basis for certifying he had reasonable grounds to believe that Petitioner was incompetent to proceed, or that counsel had a good faith basis for invoking Rule 3.210.  Therefore, Petitioner failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was an unreasonable application of Strickland.

D.      Ground Four

Petitioner expressly abandoned this claim (*see* doc. 22 at 8).

E.     Ground Five: "Petitioner was denied his Sixth Amendment rights to ineffective [sic] assistance of counsel, when counsel fail [sic] to give a properly prepared mitigation."

Petitioner asserts defense counsel failed to present mental health mitigation evidence, failed to argue that Petitioner should not be punished for his mental health issues, and failed to argue that Petitioner required specialized treatment that could not be provided by the Florida Department of Corrections (doc. 3 at 14–17).  Petitioner states he raised this claim in his Rule 3.850 motion (*id.* at 17).

Respondent contends the state court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law (doc. 18 at 14).

1.     Clearly Established Federal Law

The Strickland standard, articulated *supra*, governs this claim.

2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground 3 in his Rule 3.850 motion (Ex. J at 15–26).  The state court found as fact that defense counsel presented mitigation evidence in the form of Dr. Larson's testimony regarding Petitioner's mental health history (*id.* at 41).  Further, Petitioner was given the opportunity to address the court (*id.*).  The court concluded that although Petitioner presented more detail regarding his mental health in his Rule 3.850 motion, he failed to demonstrate that any additional information would have rendered a different result at sentencing (*id.*).

The transcript of the sentencing hearing confirms that defense counsel presented Dr. Larson's testimony regarding Petitioner's history of mental illness and his need for psychiatric treatment (Ex. J at 64–70).  Petitioner also presented this information to the sentencing court in his letter with the attached excerpt from Dr. Larson's report (*id.* at 94–95).  Additionally, Petitioner personally addressed the court at sentencing and requested a suspended sentence (*id.* at 71).  He promised to comply with his mental health treatment plan, including taking medications (*id.* at 72).  Defense counsel argued at sentencing that Petitioner had not received sufficient psychiatric treatment during his previous periods of incarceration (*id.* at 73–74).  He requested a downward departure from the recommended guidelines sentence to allow Petitioner to enter a treatment facility for his mental illness (*id.* at 74).  The court imposed a sentence of fifteen (15) years in prison, well below the

maximum guidelines sentence.[5]  In declining to downwardly depart by imposing a non-prison sentence, the court emphasized Petitioner's history of promising to comply with mental health treatment and stay off drugs, but failing to do so, resulting in seven separate periods of incarceration from 1988 to 2002  (*id.* at 74–77).

Petitioner failed to show a reasonable probability that the result of the sentencing proceeding would have been different if counsel had presented more evidence of Petitioner's mental health problems.  Therefore, the state court's denial of his claim was not an unreasonable application of Strickland.

## IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 3) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

---

[5] Petitioner's sentencing scoresheet indicated a lowest permissible sentence of fifty-seven (57) months (4.75 years) and a maximum sentence of thirty (30) years (Ex. C at 56).

At Pensacola, Florida, this 17<u>th</u> day of February 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).